UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Alfredo DeLeon, | Case No. 19-cv-1834 (ECT/DTS) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| M. RIOS, *Warden, FPC-Duluth*, | |
| Respondent. | |

Alfredo DeLeon, Federal Prison Camp—Duluth, PO Box 1000, Duluth, Minnesota 55814, *pro se* Petitioner.

Andrew Tweeten, US Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Respondent.

## INTRODUCTION

*Pro se* petitioner Alfredo DeLeon is an inmate at the Federal Prison Camp in Duluth, Minnesota. He received disciplinary sanctions disallowing good conduct time and forfeiting non-vested good conduct time for possessing a cellular phone while incarcerated. DeLeon seeks Habeas Corpus relief pursuant to 28 U.S.C. § 2241 contending that the Bureau of Prisons (BOP) imposed excessive disciplinary sanctions violating (1) the Eighth Amendment protection against cruel and unusual punishment, and (2) 28 C.F.R. § 541.3. He requests this Court reinstate 180 days of non-vested good conduct time sanctioned during the disciplinary hearing. Pet'r's Pet. at 8, Dkt. No. 1.

This Court finds that the BOP imposed a sanction consistent with the Code of Federal Regulations, BOP policy, and the Eighth Amendment and thus, recommends that DeLeon's petition for habeas corpus be denied.

## FINDINGS OF FACT

**I.     The BOP Disciplinary Process**

DeLeon is incarcerated at FPC-Duluth, having been convicted of Possession With Intent to Distribute Marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Ingram Dec'l. at ¶ 7, Dkt. No. 6. On January 14, 2015, the district court sentenced DeLeon to 78 months imprisonment and 5 years supervised release. *Id.* DeLeon's projected release date is January 11, 2021, via a good conduct time release. *Id.*

BOP Program Statement 5270.09 makes "possession of a cellular telephone or other electronic communications device . . . a Greatest Severity Level Prohibited Act", Gov. Ex. A at 2, Dkt. No. 6-1; *id.* at 9; *see also* 28 C.F.R. § 541.3, Table 1 at 108, which is the highest severity level of inmate misconduct. 28 C.F.R. § 541.3(a). Inmates charged with offenses in this category are referred for disciplinary action, which may result in one or more of several disciplinary sanctions:

Available Sanctions for Greatest Severity Level Prohibited Acts

A.     Recommend parole date rescission or retardation.
B.     Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1.         Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C.     Disciplinary segregation (up to 12 months).
D.     Make monetary restitution.
E.     Monetary fine.

2

  F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
  G. Change housing (quarters).
  H. Remove from program and/or group activity.
  I. Loss of job.
  J. Impound inmate's personal property.
  K. Confiscate contraband.
  L. Restrict to quarters.
  M. Extra duty.

28 U.S.C. § 541.3, Table 1.

  The BOP's disciplinary process is as follows. First, a staff member prepares an incident report with factual support for an alleged violation of the disciplinary code, and forwards the incident report for investigation. Ingram Dec'l. at ¶ 3. The investigating officer then provides a copy of the incident report to the inmate, typically within 24 hours. *Id.* After completing the investigation, the investigating officer forwards the incident report to a Unit Disciplinary Committee (UDC) for an initial hearing. *Id.* at ¶ 4. This hearing generally occurs within five working days of when the incident report was issued. *Id.* The Warden must approve any UDC hearings that are scheduled to occur outside of the five-work-day period. *Id.*

  The UDC may: (1) find the inmate guilty and impose sanctions; (2) find the inmate not guilty; or (3) refer the incident report to the DHO for further review. *Id.* If the UDC refers the incident report to the DHO, it advises the inmate of his rights at the DHO hearing, which include the right to make a statement, to present witnesses or documentary evidence, and to request staff representative assistance during the hearing. *Id.* at ¶ 5.

After the hearing, the DHO issues a final opinion, which is delivered to the inmate in writing. The opinion states the DHO's determination of guilt or, alternatively, refers the incident back to the UDC for further investigation, review, and disposition. *Id.*

## II.     DeLeon's Incident And The Discipline Imposed

On November 17, 2018, prison staff discovered a black LG Cell Phone, an AT&T SIM card, and a black USB charging cable in DeLeon's bunk under his pillow. Ingram Dec'l. at ¶ 9. DeLeon shared the room with another inmate. *Id.* After BOP staff delivered the incident report to DeLeon and advised him of his rights, DeLeon admitted to the violation, stating: "it is mine I guess." *Id.* at ¶ 10.

On November 20, 2018, the UDC conducted an initial hearing; DeLeon made no comments. *Id.* at ¶ 11. The UDC referred the case to a DHO, advised DeLeon of his rights, and gave him the opportunity to request witnesses and a staff representative, both of which he declined. *Id.* On December 13, 2018, DHO Tawana Ingram conducted the DHO hearing, at which DeLeon again admitted to the offense, stating: "I'm guilty of the phone in my bed. My cellmate had nothing to do with it." *Id.* at ¶ 13. DHO Ingram concluded that DeLeon took responsibility for his actions, Pet. Ex. C, Dkt. No. 1-1., and sanctioned him with: (1) disallowance of 41 days good conduct time, (2) forfeiture of 180 days non-vested good conduct time, (3) loss of 180 days of commissary privileges, (4) loss of 180 days of phone privileges, (5) loss of 180 days of visiting privileges, and (6) impoundment of personal property for 90 days. Ingram Dec'l. at ¶ 14. DeLeon had no previous disciplinary sanctions with the BOP. *Id.* at ¶ 8.

On January 7, 2019, DeLeon appealed the DHO sanctions to the BOP Regional Director's Office, making three arguments: (1) he was sanctioned for conduct that may

occur in the future; (2) the DHO may only impose a sanction of either lost good time *or* non-vested good time, not both; and (3) DHO Ingram imposes a "blanket policy" of the "harshest infractions to everybody that comes in front of her." Pet. Ex. D. On February 19, 2019, Regional Director Krueger denied DeLeon's appeal, noting that the DHO imposes sentences to address both the severity of the misconduct and to deter future misconduct, and finding that the sanctions were "within the guidelines established in the policy" and "the discipline process was conducted in accordance with Program Statement 5270.09." *Id.*

On April 3, 2019, DeLeon appealed to the BOP Office of the General Counsel, arguing that Director Krueger's response did not address the language in the Program Statement, which allows a forfeiture of earned good time *or* non-vested good time but not both. Pet. Ex. F. DeLeon also requested that the General Counsel consider that this was DeLeon's first disciplinary incident. *Id.* On May 17, 2019, the Office of the General Counsel responded, concluding the disciplinary proceedings were conducted in compliance with Program Statement 5270.09, that the DHO's determination of guilt is supported by the evidence, and that DeLeon did not present any evidence to show that the sanctions were too harsh. *Id.* DeLeon has exhausted his administrative remedies. Pet'r's. Pet. at 8.

## CONCLUSIONS OF LAW

DeLeon contends that his sanctions are excessive because: (1) the BOP imposed a sentence "grossly higher than others" committing similar or more severe offenses; (2) the BOP Program Statement 5270.09 (28 U.S.C. § 541.3) permits sanctions forfeiting either earned statutory good time *or* non-vested good conduct time, but not both; and

5

(3) he is not a public safety risk and this is his first disciplinary infraction.[1] Pet'r's. Pet. at 6–8, Dkt. No. 1.

Neither the Regional Director nor the Office of the General Counsel addressed DeLeon's contention that the language of Program Statement 5270.09 prohibits a sanction of both earned good time and non-vested good time. Both decisions upheld the procedural integrity of the UDC and DHO hearings and the appropriateness of the sanctions' severity relating to DeLeon's conduct.

**I.      Jurisdiction**

Federal prisoners may petition a federal court for relief under a Writ of Habeas Corpus, 28 U.S.C. § 2241, when challenging the execution or duration of their sentence. *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002) ("A petitioner may attack the execution of his sentence through § 2241 in the district where he is incarcerated"); *see also Mcintosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997) ("a § 2241 action challenging prison disciplinary proceedings, such as the deprivation of good-time credits, . . . is challenging an action affecting the fact or duration of the petitioner's custody").

---

[1] In DeLeon's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, he structures claims 1 and 3 as excessive or unjust punishment, but does not explicitly raise an Eighth Amendment claim. Pet'r's Pet. at 6–8, Dkt. No. 1. However, in DeLeon's reply brief to the Government's response, DeLeon recharacterizes these two claims as Eighth Amendment violations, technically raising a new argument not in his original petition. Reply to Resp. of Pet'r's. Pet. at 2–4, Dkt. No. 8. Because *pro se* petitions should be construed liberally so as not to unreasonably subject *pro se* petitioners to stringent procedural niceties, this Court interprets DeLeon's initial "excessive" or "unjust" punishment claims as synonymous with his Eighth Amendment claim. *See Spencer v. Haynes*, 774 F.3d 467, 471 (8th Cir. 2014).

6

DeLeon properly exhausted his administrative remedies, *see* Pet'r's. Pet. at 8, Dkt. No. 1, which is a jurisdictional prerequisite to seeking federal habeas corpus relief under 28 U.S.C. § 2241. *United States v. Chappel*, 208 F.3d 1069, 1069–70 (8th Cir. 2000) (*per curiam*). The Government concedes jurisdiction and venue in this Court are proper, *see* Resp. to Pet. at 6, Dkt. No. 5, and this Court concurs.

## II.     Standard of Review

Challenging the revocation of good-time credit is properly raised in a habeas petition. *See Prieser v. Rodriguez*, 411 U.S. 475, 487 (1973). Revocation of an inmate's good-time credit "implicates a liberty interest that is protected by the Due Process clause." *Espinoza v. Peterson*, 283 F.3d 949, 951–52 (8th Cir. 2002). Prisoners challenging disciplinary findings are entitled to some due process rights, though not the same rights as criminal defendants, and prison disciplinary committees are appropriate bodies to deliberate a prisoner's guilt and punishment. *See Wolff v. McDonnell*, 418 U.S. 539, 564–68, 592 (1974).

A prison disciplinary committee need only have "some evidence" that a prisoner violated prison rules to permissibly revoke good-time credit. *Superintendent, Mass. Corr. Instit., Walpole v. Hill*, 472 U.S. 445, 455 (1985). Though "federal courts are not part of the appellate process for prison disciplinary proceedings" and will not reconsider or reassess credibility of the evidence, *Toombs v. Hicks*, 773 F.2d 995, 997 (8th Cir. 1985), in some instances courts may review prison disciplinary proceedings. *Gomez v. Graves*, 323 F.3d 610, 612 (8th Cir. 2003). In these circumstances, courts defer to prison disciplinary sanctions unless they "are wholly unsupported by the record" and only examine whether there is some evidence to support the sanction. *Id.* 613; *Espinoza*, 283

F.3d at 952. Here, the record establishes that there is sufficient evidence to support the imposition of sanctions. DeLeon asserts, however, that the sanctions imposed were so harsh as to violate his Eighth amendment rights and violated the BOP's regulations.

## III. Eighth Amendment Violation

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Punishments that are "inherently barbaric" or disproportionate to the crime for which it is imposed are cruel and unusual. *Graham v. Florida*, 560 U.S. 48, 59 (2010); *see Solem v. Helm*, 463 U.S. 777, 303–04 (1983); *Weems v. United States*, 217 U.S. 349, 367 (1910) ("it is a precept of justice that punishment for crime should be graduated and proportioned to offense").

However, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980); *see Harmelin v. Michigan*, 501 U.S. 957 (1991) (Kennedy, J., concurring) (it is "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality"). And courts must apply this narrow proportionality principle in way that "grant[s] substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *Solem*, 463 U.S. at 290. Thus, sentences which comport with a legislatively prescribed term are unlikely to be deemed grossly disproportionate.

Challenging the proportionality of a sentence may be done in two ways: A defendant may bring an as-applied challenge, asserting that the length of their sentence is disproportionate "given all the circumstances in [their] particular case." *Graham*, 560

U.S. at 59. Alternatively, a defendant may bring a categorical challenge, asserting that a permitted sentence is disproportionate to the crime in all instances. *Id.* at 60. DeLeon's claim appears to be most closely analogous to an as-applied proportionality challenge to the sanctions that were imposed.

But even assuming a loss of good conduct time may constitute an Eighth Amendment violation, DeLeon has not presented a viable claim here. DeLeon's sanctions are not grossly disproportionate or extreme, and fall within the range of available sanctions 28 C.F.R. § 541.3 permits for DeLeon's conduct. *See* Shelton v. Jordan, 613 F. App'x 134, 135 (3d. Cir. 2015) ("To the extent that a loss of GCT can constitute an Eighth Amendment violation, Shelton's punishment was not excessive in relation to the underlying offenses . . . [g]iven the severity of [petitioner's] offenses, and because the sanctions fall within the applicable range permitted by the regulations, we conclude that the punishment here did not violate the Eighth Amendment").

DeLeon claims his punishment was so disproportionately harsher than other inmates who committed similar (or more severe) infractions that it violates the Eighth Amendment. DeLeon cites four other inmates with similar violations. Three of these inmates possessed a phone and one inmate possessed a phone, marijuana, and tobacco. All four inmates lost forty-one days of earned good conduct time, among other sanctions, but lost no non-vested good conduct time. Reply to Resp. to Pet'r's. Pet. at 2, Dkt. No. 8. DeLeon rests his claim on the fact that he alone lost non-vested good conduct time. This argument is unpersuasive. What DeLeon fails to consider are the punishments that were imposed on the other inmates that were not imposed on him. For example, the DHO fined one inmate five-hundred dollars and imposed fifteen days of disciplinary segregation on

another. Pet. Ex. 1-1 at 1–2. The DHO imposed no such sanctions on DeLeon. In addition, others who were arguably similarly situated lost all email privileges for 180 days, but DeLeon did not. Reply to Resp. to Pet'r's. Pet. at 3, Dkt. No. 8; Pet. Ex. 1-1 at 3. Thus, DeLeon's argument that his punishment was more severe than that imposed on other inmates fails *ab initio*. DeLeon's punishment is different from, but not necessarily more severe than, that imposed on other inmates. Its relative severity is simply not established on this record.

Indeed, many federal inmates sanctioned for Rule 108 violations have received penalties much *more* severe than DeLeon. *See, e.g.*, *Singleton v. White*, No. 3: 18-CV-1265, 2019 WL 1245817 at *2 (M.D. Pa. 2019) (sanction of 41 days good conduct time credit and forfeiture of 378 days non-vested good conduct time for possessing a cell phone); *Briones v. Federal Bureau of Prisons*, No. 2:16-cv-1172, 2017 WL 1731061 at *1 (W.D. La. 2017) (sanction of 41 days good conduct time credit and forfeiture of 270 days of non-vested good conduct time credit for possessing a cell phone charger).

DeLeon also contends that his punishment was unduly harsh because he is "working hard and taking classes, . . . not a [p]ublic [s]afety [r]isk, does not have any escapes," and is at a minimum-security facility. Pet'r's. Pet. at 7, Dkt. No. 1. While commendable, these factors are wholly irrelevant to whether DeLeon's sanctions violate the Eighth Amendment.

In short, 28 C.F.R. § 541.8(g) allows the DHO to impose any available sanction in Tables 1 or 2 on an inmate found to have committed a prohibited act, corresponding with the severity level of the infraction. *See also Glouser v. Paratt*

, 605 F.2d 419, 420-21 (8th Cir. 1979) ("The discretion of the prison officials on matters purely of discipline, within their powers, is not open to review"). That DeLeon believes his sanctions were unduly harsh compared to others does not make them unconstitutional, especially when the sanctions imposed are expressly permitted by the BOP regulations.

## IV.   Regulatory Interpretation

DeLeon also argues that the DHO violated BOP policy by imposing as sanctions both (1) the disallowance of 41 days good conduct time, and (2) the forfeiture of 180 days non vested good conduct time. See Petition ¶ 13 "Ground Two," Docket No. 1. He argues that the BOP policy authorizes the DHO to impose one sanction or the other (loss of 41 days good conduct time or loss of 180 days non-vested good conduct time) but not both, pointing to the word "or" in the text of paragraph B:

> Forfeit and/or withhold earned statutory good time **or** non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

28 C.F.R. § 541.3, Table 1 (emphasis supplied). DeLeon argues that the use of the word "or" to separate "statutory good time" from "non-vested good conduct time," particularly in a sentence that otherwise uses the phrase "and/or," means that "or" is strictly disjunctive: the BOP can sanction statutory good time or non-vested good conduct time, but not both. The Government ignores this textual argument, simply asserting that the sanctions imposed were within policy. See Gov't Response at 9-10, Docket No. 5.[2]

---

[2] The Government's brief, while ignoring DeLeon's textual argument, focuses instead on explaining that the BOP afforded DeLeon his procedural due process rights—an issue not even raised by DeLeon—and then concludes, without analysis, that DeLeon's "sanctions are in accordance with the Bureaus policy for inmate discipline." Resp. to Pet. At 9, Docket No. 5. The Government's brief has failed to provide an analysis of BOP

11

As the Court understands it, DeLeon's textual argument is in fact answered by the language of Program Statement 5270.09 (Inmate Discipline Program),[3] which incorporates 28 C.F.R. § 541.3 and Table 1 (Prohibited Acts and Available Sanctions). The program statement sets forth the available sanctions, including which sanctions are mandatory ("must" be imposed) and which are permissive ("may" be imposed) for a Code 108 violation:

> (1) Greatest Severity Level Offenses. The Discipline Hearing Officer (DHO) imposes one or more of sanctions A through E. Sanction B.1 **must** be imposed for a VCCLEA inmate rated "violent" (an inmate who, per the Violent Crime Control and Law Enforcement Act of 1994, committed a crime of violence on or after September 13, 1994) and for a PLRA inmate (an inmate sentenced for an offense committed on or after April 26, 1996, per the prison Litigation Reform Act). The DHO **may** impose any available sanctions (A through M) in addition to sanctions A through E. All Greatest severity level charges must be referred to the DHO.

Program Statement 5270.09, at 9 (Chapter 1, § 541.3(b)(1)) (emphasis supplied).

DeLeon is a "PLRA inmate."[4] Thus, the program statement requires that the paragraph B.1 sanction be imposed. Paragraph B.1 states:

> B.1 Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

Id. at 45 (Table 1 – Available Sanctions for Greatest Severity Level Prohibited Acts). Accordingly, the DHO imposed this mandatory sanction, disallowing 41 days (75%) of

---

regulations and how the BOP regulations at issue were in fact applied to the facts of this case.

[3] The program statement has an effective date of August 1, 2011. It is found in the record as Ingram Decl. Ex. A, Docket No. 6-1, and is also publicly available at bop.gov/policy/progstat/5270_009.pdf (last visited Feb. 5, 2020). As the footnote in the program statement explains, the text that is in bold is from 28 C.F.R., Part 541, and the non-bold text in a different print type reflects implementing instructions.

[4] It is undisputed that DeLeon is a PLRA inmate. *See* Ingram Decl. Ex. B, Docket No. 6-2 (BOP inmate data, "PLRA sentence").

good conduct time credit for a year. Ingram Decl. ¶ 14 and Ex. G at 2, Docket Nos. 6, 6-7.

Under the Program Statement, in addition to this mandatory sanction, the DHO "may" impose additional sanctions from among those listed in paragraphs A through M. Here, in addition to the required B.1 sanction, the DHO also imposed 180 days forfeited non-vested good conduct time under paragraph B,[5] 180 days loss of commissary, phone, and visiting privileges (paragraph F), and 90 days impound personal property (paragraph J). Id. Thus, the DHO did not impose the 41 days and the 180 days under paragraph B; she imposed the 41 days as the mandatory sanction under B.1 and additionally imposed the 180 days as an additional, discretionary available sanction under paragraph B. Thus, DeLeon's textual argument (the meaning of the word "or" in paragraph B) is irrelevant because the DHO only imposed one sanction under paragraph B, not two. The plain language of the program statement permits the DHO to impose one or more available sanction A through M, in addition to the mandatory sanction imposed under B.1.

## RECOMMENDATION

For the reasons stated above, this Court RECOMMENDS:

1. Petitioner's application for a writ of habeas corpus be DENIED; and
2. This action be DISMISSED WITH PREJUDICE

Date: February 14 , 2020                         s/David T. Schultz
                                                 DAVID T. SCHULTZ
                                                 United States Magistrate Judge

---

[5] Shown as "FF NVGCT" in Ex. G at 2.